The last case for argument, Case No. 23-1702 from the Southern District of Iowa, Menard v. Farm Bureau Property & Casualty Insurance Company. May it please the Court. Counsel. The legal issue Farm Bureau brings to this Court today is one of strict contract interpretation. The issue revolves around a specific motor vehicle liability exclusion included in a policy issued by Farm Bureau to Cynthia Bowen. Ms. Bowen was injured while attempting to load wood at a Menard's store. Menard's proceeded to tender a defense of the liability claim, alleging that they weren't insured. For purpose of this appeal, Farm Bureau is strictly arguing that because Ms. Bowen was a named insured under the policy, there is no coverage under the policy pursuant to what the policy labels as an intra-family member immunity clause. The District Court found that while those clauses are valid in the State of Iowa, that provision did not apply in this circumstance because Ms. Bowen was not related to the Menard's employee. Farm Bureau argues today that that is a misinterpretation of both the provision itself and controlling Iowa law, which would find that Ms. Bowen, any bodily injury suffered by Ms. Bowen, would be precluded from coverage under the liability provision. The provision itself reads, there is no coverage for any bodily injury to any insured or any member of an insured's family residing in the insured's household. Farm Bureau, and I stand here today to say, no coverage for any bodily injury to any insured is as unambiguous as an insurance policy can probably get. And looking at this... If that's the case, it wasn't addressed by the District Court. It wasn't addressed by Appellee's Counsel. So I asked myself, well, was this even argued to the District Court? Of course, it was argued in breadth. But you know where I found the argument? In one sentence at the bottom of page 19 of your brief in office, in your summary judgment brief to the District Court. Your Honor, we... Is that really preserving the issue? We did preserve it. We did argue it. The District Court did rule on it. You didn't argue it orally, did you? No, there was no oral argument. You didn't argue it anywhere except on page 365 of the appendix, which was page 19 of your summary judgment brief, which was filed quite late in the large document. We did argue that the exclusion did apply to preclude liability coverage to Miss Bowen's injury. Yeah, that's the general argument, which would include the source as well as the subject. Well, the sole basis for liability were the personal injuries suffered by Miss Bowen. That was the sole source of the claim being filed by Menards, and that was the sole source of what they sought coverage for. The issues that were raised in the summary judgment briefing were threefold, the first being was... I know what they were. I'm talking about this issue, because it's remarkable that almost the only, I mean, the key issue raised on appeal was not even discussed by the district court. That's usually very surprising. It always raises some question, why not? I mean... The why not is that it wasn't the focus of the case presented to the district court. The district court did address this exclusion. They just found that the exclusion itself didn't apply because the title of the exclusion somehow implies that Miss Bowen had to be related to the Menards employee for the exclusion to apply. We did argue... No, no, I know, because the source of the injury was an employee who was not a member of the family. That's correct. That was the district court's analysis. On this specific exclusion, yes, because the title of the exclusion is... Without addressing whether the exclusion covers victim as well as source. Well, the district court found as a matter of law that the exclusion didn't apply to the claim. Our position is that the exclusion does apply to the claim and that the district court's interpretation of the exclusion itself is contrary to controlling Iowa law and is also contrary to the plain interpretation of the contract itself. The terms of the contract, the provision in the contract specifically states there is no coverage for any bodily injury to any insured. Farm Bureau raised that issue with the district court, argued that the exclusion applied by its plain terms. District court found based solely on the title of the exclusion that because Miss Bowen wasn't related to the Menards employee, the exclusion was not applicable. Further, in a footnote, the district court then also determined that if our interpretation of this exclusion were to be accepted, it would severely impinge or severely limit the applicability of Iowa's omnibus liability statute, motor vehicle liability statute. And those two contentions are respectfully a misreading of both the policy and Iowa law. Iowa, the Iowa Supreme Court, which this court is bound to apply or to follow when applying Iowa law in contract interpretation of insurance policies, ruled in 2008 that there's no requirement in coverage in the Jones case, no requirement of coverage for this type of claim under the omnibus liability statute. Beyond that, the facts match up to both the Rodney case, which was decided in 1973, and the Walker case, which was decided in 1983, in which non-family member insureds were bound to be excluded from being able to apply for liability claims for similar awarded family member exclusions. And I think the timing of this is important because there was a case prior to Rodney, the dairy land insurance for concrete products, which is actually closer factually to this case, in which case a concrete company was helping insure a loaded vehicle with concrete. The insurer was pinned between the concrete itself and the car. The concrete company did file an auto liability claim with the insurer of the injured vehicle, and there was coverage. On that instance, there was no family member or no insured exclusion claim in that case. That case was decided in January of 1973. The Rodney case was then decided in July of 1973, determining that these types of exclusions are valid, they are enforceable to exclude liability coverage of an injury suffered by an insurer. Minard's counsel suggests that there was a change in Iowa law that reflects a significant enough change in the, at least the legislature's view of this, that we should rethink those cases. Do you agree? No. We just have to look no further than that Jones case in 2008, which was decided after those 1999 adjustments to the legislature, in which the court mentioned that the applicability of the family member exclusion has applied to a minor, and analyzed that exclusion has applied to a divorced father of the mother in the context of a consortium claim. In that case, the exclusion was nearly identical. Here. The court had no problem recognizing that the child case was excluded. Her claim for bodily injury was excluded because she was in the vehicle using the vehicle. Was that at issue, or was it only the divorced father's claim that was at issue? In other words, did the court have to actually address the daughter's claim? They did not have to actually address the daughter's claim, but I think it's important that they felt the need to talk about the daughter's claim in that case, to provide context on the father's claim. The father is ultimately found to not be insured under the policy, and not be a president of the insured mother's household. So his claim was valid as a liability claim on the consortium. In this case, Ms. Bowman is a need insurer under the policy. She is the purchaser of the policy. She is the one that decided on the coverage. NARS is an unnamed insurer under the policy. When using a vehicle with the consent of the insurer, the plain language about exclusion leaves no ambiguity. Any coverage for any insurer is precluded from liability coverage. There's no ambiguity in the provision, in the terms, or in its context. Addressing the change in a statute in 1999 is a lead version of the case, and identifies what those changes are. It's simply that they require two things. That insurers must insure named insurers and permissive users at the same time, so you can't have a secondary difference being applicability of coverage from the named insurer and permissive user. And the second one says minimum liability limits when a claim is covered under the policy. And I think that that's oftentimes a confusing aspect when it has to do with liability limits. But Jones expressly states that insurers and insurers still have contractual rights to determine what claims are covered under the policy. And this is evidenced through additional exclusions that have been enforceable and found valid by the Iowa Supreme Court. Is there any potential acts exclusion, non-permissive driver exclusion? The Iowa Supreme Court still recognizes that new liability insurers are able to limit the claims that are permissible or the claims that are covered under the policy. I want to ask you about something I'm curious about because it wasn't really discussed in the briefing. In the number of the Iowa cases I read, the court, the Iowa Supreme Court made a point of the fact that if coverage is excluded under this family, intra-family exclusion, if you want to call it that, that the insured would still have a claim under their uninsured motorist coverage. Was that at all addressed in this case? Or is there a reason why uninsured motorists wouldn't kick in in this case? It wouldn't kick in in this case, Your Honor, because NARDS is insured. The person at fault has insurance that he's willing to cover. And this boy never filed an uninsured claim with Farm Bureau. Those cases make clear, and I do believe we addressed it briefly in our briefing, that that is a fallback for when a named insured is injured in a vehicle and cannot obtain liability coverage for one reason or another. And Iowa does mandate broad uninsured motorist coverage on their policies. In fact, in order to disclaim that coverage, you have to file a separate written request with the insurance company, and you have to obtain that on file. In this case, Ms. Bowen doesn't ever request an uninsured motorist claim because Menards is able to satisfy the liability that their employee has for dropping a 2x10x10 piece of green treated lumber on her while on Menards' property. At this time, I'd like to reserve the remainder of my time for rebuttal. Ms. Kirk? Good afternoon, Your Honors. May it please the Court, counsel. My name is Veronica Kirk. I represent the plaintiff, Appeline Menard, Incorporated, in this matter. Menard respectfully requests that this Court uphold the decision of the District Court in this matter and affirm the summary judgment order granting coverage in favor of Menard. I'd like to begin by addressing an initial question you may have that counsel just alluded to. Why is Menard here asking for coverage? Why is Menard not assuming liability for its own employee's actions? Menard is not asking for anything that it's not entitled to. Farm Bureau wrote this insurance policy, not Menard. Farm Bureau had no hand in dropping it. I don't think you have to. I'm sorry? That's not an issue here. Okay. If you've got a good claim, you've got a good claim. If you don't, you don't. Correct. So insurance policies are contracts of adhesion which should be strictly construed against insurers. Well, that started off with one of the most controversial assertions you can make. It isn't really on point to what we're looking at. As counsel noted it, I wanted to just briefly address that. The Iowa Supreme Court has given us a template to perform an insurance coverage analysis. So initially, when we're determining if there is insurance coverage available for a potential insured, we first determine if coverage applies and then determine if there's an exclusion which takes coverage away. So I'd like to refer to a couple of policy terms. First, there are some general definitions in the Farm Bureau policy. I'd like to refer first to the severability clause. This insurance applies separately to each insured against whom a claim or suit is filed. So having more than one insurer does not increase the lives shown in declarations. What's wrong with the plain language argument made on appeal? There's nothing wrong with the plain language argument. That the exclusion clearly says it excludes insured, named or otherwise, whether they're the source of the injury or the victim of the injury. The only analysis the district court made was to conclude that the source of the injury, Menard's employee, was not a member of the family. That strikes me as barely scratching the surface of the issue. Yes, Your Honor, because an issue in motion for summary judgment was whether or not the vehicle was being used by the Menard's employee in loading the horse into the principal vehicle. Have you won that issue and it's not on appeal? Correct. So the district court had to spend... Then the district court went through a coverage analysis to determine if there was coverage under the Farm Bureau policy. So first they looked at... Determined there was and that's not an issue on appeal. Let's get, you know... So I was wondering... Move to... The plain language interpretation issue. Issue next. We looked first at each insured making a claim under the policy. So under the first is severability clause. And then you move to the grant of coverage. So under the Farm Bureau policy, they have several of what they call modules where you can find the coverage for the different types of insurance. That is the policy. The insurance that we're talking about today is, of course, the vehicle liability insurance. Let's get there. Who is an insured? It lists several grants of several types of categories. And Ms. Ball, who is an insured? Correct. Indeed the name insured, I guess. Whatever. Ms. Ball isn't named insured. Okay. And then there's a listing of four categories of persons who are insured. And number three is any other person while using your personal vehicle, if its use is within the scope of your consent, then the list is joined with four. So the minority employee is a permissive user. Let's get to the language of the exclusion. Okay. So then, as he said, once we get to the coverage, we move to the exclusion. So we'll get coverage. The Inter-Family Community Exclusion states that there is no coverage for any body of insurance to any insured or any member of the insurance family who might be named the insured person. This is the language on page 16 of the review. It looks to consider the whole universe of all potential insurers at the same time and evaluate that. You know, you're looking down. Did you read the language, any bodily injury inflicted on or suffered by any insured? That's the language I'm concerned about. Isn't that in the exclusion? It doesn't say suffered by. I'm sorry. If you look at, there is no coverage for any bodily injury to any insured or any member of an insured's family residing in the insured's household. It's on page 16 of the APLE's brief. And if it says any insured, you're trying to say that once, if I'm understanding your position, you're saying that if the Menard's employee is an insured, which everybody agrees, then Ms. Bowen cannot also be an insured, so that just knocks her out of the ring? My argument is that Farm Bureau is considering the entire potentiality of all insureds at the same time. And if you read the insured clause in conjunction with the severability clause, it states that you should look only at the insured making the claim at that particular time, find coverage for them, find out if there's an exclusion, and then move on. Farm Bureau is saying you look at everyone all at once, this whole big blob of potential insureds, and apply the exclusion to all of them all at once. See, I was having a real tough time following that argument because if you're saying, well, I guess just to follow, maybe I shouldn't have interrupted, but are you saying what Judge Kelly just said, that as long as the Menard's employee is an additional insured, that Ms. Bowen isn't an insured? She could also potentially be an insured, but she's not making a claim here. So there's no need to even look at her. She's making a claim. She is. The Menard employee is making a claim. Ms. Bowen happens to be a beneficiary of the claim, of the policy. We're asking Farm Bureau to pay money to their own insured. Correct. We're asking Farm Bureau to provide liability coverage for the Menard employee, who they admit isn't insured. They're providing liability coverage. And it just so happens that Ms. Bowen, their own insured, is the person who got hurt. Well, under your theory then, the exclusion would never apply to even an intrafamily. No, that's not true. So if you look at, if, for example, the Menard employee had been assisting his spouse to load boards into their own vehicle, then the exclusion would apply. Why would it apply in that situation and not in this situation? If you read the exclusion and you apply, you insert the person's name in the place of the insured. So if you read, there is no coverage for any bodily injury to any insured or any member of an insured's household residing in the Menard's employee's household. Well, that makes sense, right? So there's no coverage for the Menard employee's spouse and family or whoever lives in his house. That's what it's intended for. It's intended for if you're driving your kids and you accidentally get into an accident that injures your family members. It's intended to exclude liability for your family. How is this case different from that Walker case? They seem to have the exact same facts. Certainly. I'd like to address that. So that's kind of what Farm Bureau relies upon for the majority of their interpretation. I would note that that was a 1983 Iowa Supreme Court decision. And it's, that case was primarily a public policy issue. I would note that in that case, an American family policyholder was being driven by his friend, Mr. Walker. And he was the American family public policy, excuse me, American family policyholder was fatally injured. So his estate brought suit against Mr. Walker. Mr. Walker asked American family for a defense and indemnity. They refused to provide it, citing their inter-family immunity exclusion. Now, the parties asked the court to make public policy decisions on a couple of matters, including whether Iowa's financial responsibility statute required that motorists carry insurance coverage, and whether Iowa's ---- I want to ask you about that, but let me come back to the language of the exclusion. So I ---- There is no coverage for any bodily injury to any insured. Now, if you'll note the ---- This is an issue that involves bodily injury to Ms. Bowen. If you'll note the language in the, it states that there is no bodily injury for, or excuse me, there is no coverage for any bodily injury to any insured. And then it also goes on to talk about the insured. So ---- About what? It goes on to discuss the insured. It is not clear in that situation ---- Where it goes on where? In the exclusion. No, I just read you the whole exclusion. It's in your addendum. If you go on further, it talks about the person must also be residing in their household. So that ---- But that modifies the phrase, any member of the insured's family residing in the household. That doesn't modify the whole. So does this whole case then turn on whether that phrase modifies the whole sentence or whether it modifies the one phrase? I don't believe so. I would submit that it, first off, that exclusion simply doesn't apply because it doesn't make sense to apply it to the entire potentiality of all possible persons that you are searching for coverage for. The plain language of the statute or of the contract when you are looking ---- I don't understand that argument. I mean, it's no coverage. You are seeking coverage for Ms. Bowen's claim against your client. Correct. And this says there is no coverage for an injury to an insured, and she was an insured. Excluded. Plain language. I would submit that you don't have to get that far because she is not the one making the claim. Menard is the one making the claim, and you don't evaluate Ms. Bowen. No, it's coverage for the underlying third-party claim. That's always what we're talking about in these declaratory judgment suits. Why? Does the insurer seeking a no-coverage, no-defense ruling, is that was coverage improperly denied on the grounds that this is not a covered claim? So I would submit that that ---- We, Farm Bureau, don't have to cover you for a claim by Ms. Bowen who wasn't insured, with your insurer, or with our insurer, because she's the one who was injured. I'm sorry, I didn't understand your question. Well, we aren't discussing the same case. I believe you. I don't think it could be any clearer. You can talk about public policy and financial responsibility, and then I have trouble finding your ---- You cite a 1998, and then you call it a 1999 amendment to the minimum financial responsibility, and I go to the Iowa Code that's in my Minneapolis library, and it lists all the amendments, and there's no 1998 amendment. The last one listed is 1983. I don't know what you're talking about. I verified it with the Legislative Service Agency here in town. What? I verified that date of the amendment with the Legislative Service Agency. I'm sorry. I verified the date of the amendment with the Legislative Service Agency. My point, Your Honor, is that ---- Well, where is it? Why didn't you give it to us then? I did, Your Honor. It's included in my materials. Well, where in the materials? The essential point, Your Honor, is that if you read ---- I'm serious. Where do I look? I've got to find it. I looked. I didn't go through. I don't know how many volumes of appendix you gave us. But, you know, when lawyers don't either give it to us or tell us where to find it, you say, oh, I asked the Legislative Services people, and they assured me that blah, blah. The essential point, Your Honor, is if you read it, in conjunction with the definition of who is an insured, you see that you do not need to evaluate the entire universe of all the potential insureds. You simply look at ---- No, I'm just looking at Ms. Baldwin. I think the severability clause is irrelevant. No, wait a minute. On this 98 amendment, I wanted to find it because I think the Shelder case in 1999 refutes your argument based on all the amendments discussed in Shelder. I don't believe it does because all of the other pieces that my client states after the Walker case, they all refer to uninsured and underinsured low-risk coverage. They do not refer to liability coverage. The court has not addressed ---- Shelder does, though. Who's talking? I don't think so. The court has not addressed the specific factual situation since the Walker case. And after that time, the legislature has ---- So you can't tell me whether Shelder was decided before or after the amendment that you're relying on that I can't find? If you'll allow me, I'll pull it up here. It's on my table. Oh, it's fine. It's all right. Thank you. Mr. Lebeau? I'd greatly like to address counsel's last point that the case in the site addressed a family member. I think those were exhaustingly addressed in the briefing, but Kraus and Lincoln were both decided in 1989. Henry Boyd was decided in 2001. Ringelberg, an Iowa Supreme Court case was decided in 2003. The Iowa Supreme Court was able to address the same issue the same year. And Rickard-Jones is in 2008. I think counsel's point about all those cases addressing underinsured and uninsured voters is part of the answer. They're addressing underinsured and uninsured voters because the family member exclusion applied to them. This exclusion is valid in Iowa. The language makes clear that it applies to any insured. I quote the counsel in the district court. He read any out of the exclusion itself. Counsel's argument regarding the severability clause has already been reviewed and determined by the Iowa Supreme Court. It will pour in advance by the Iowa Court of Appeals and Eastman. All of them find that the use of the phrase and for any insured does not change the analysis of the severability clause because they are unequivocally applying to every insured under the policy. And for purposes of covered under the policy, it's primarily required by Iowa law to cover the named insured as well as any permissive user at the same time. That is explicitly what the 1999 amendment to Iowa Code Sections 321 and 321A dealt with. Farm Bureau cannot exclude its uninsured from coverage in situations like this. For the precise reason that counsel argues that they are, they are required by Iowa law to cover their named insured. This is a policy that the named insured purchased. The coverage is between the parties. The exclusion could not be any clearer. It's valid under Iowa law. The district court's misapplied concrete interpretation rules when it only looked at the title of the exclusion and refused to look at what was the terms or the provision itself of the exclusion. For all these reasons, Farm Bureau would request this Court reverse the grant of summary judgment. The district court didn't just look at the title. It didn't look at anything on this issue. It didn't acknowledge this issue. I would. Probably, I think, because you buried it so deep in your summary judgment brief. I would. Your Honor, the issue of who was an insured did take quite a bit of briefing. The issue of what? Who was an insured did take up quite a bit of the briefing on summary judgment. Yes, because you were arguing that they were. Yes. Yes, Your Honor. That was because you were arguing the issue. You lost and didn't appeal. We don't appeal that Menards is an unnamed insured under the policy. We did raise and the district court did rule on the issue of whether the intrafamily member immunity exclusion applied to Menards. Responding to one sentence in your summary judgment brief. With that, Your Honor, we have some sympathy for district courts who are led completely off the path and then have to deal with it. At least I have great sympathy. Summary judgments be granted to the Farm Bureau. Thank you. Very good. The case has been thoroughly briefed and argued and we will take it under advisement. Does that complete the afternoon's calendar? Yes, it does, Your Honor. Very good.